UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JOFFREY CLEVELAND and<br>WADE T. VISCONTE, ATTORNEY<br>AT LAW, d/b/a ALL AMERICAN LAW<br>FIRM OF LA., LLC | CIVIL ACTION NO. 14-3350 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CENTRAL STATES SOUTHEAST, AND<br>SOUTHWEST AREAS HEALTH AND<br>WELFARE FUND and UNITED STATES<br>OF AMERICA | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a 12(b)(6) Motion to Dismiss (Record Document 11) and a Motion for Partial Summary Judgment (Record Document 23). The Motion to Dismiss was filed by Defendant, Central States, Southeast and Southwest Areas Health and Welfare Fund ("The Fund"). See Record Document 11. Plaintiff has filed a Memorandum in Opposition to the Motion to Dismiss. See Record Document 21. The Motion for Partial Summary Judgment was filed by Plaintiffs, Joffrey Cleveland ("Cleveland") and Wade Visconte d/b/a as All American Law Firm of LA ("Visconte"). See Record Document 23. For the reasons which follow, the Motion to Dismiss is **GRANTED** and Plaintiffs Joffrey Cleveland and Wade Visconte d/b/a All American Law Firm of LA's claims are **DISMISSED**. Plaintiffs' Motion for Partial Summary Judgment is **DENIED AS MOOT**.

**BACKGROUND**

The Fund is an ERISA governed, self-funded "employee welfare benefit plan" under 29 U.S.C. § 1002(1). See Record Document 1. The sole and exclusive offices of the Fund are located in Rosemont, Illinois. Id. at ¶ 4. The Fund provides health coverage to

employees of multiple employers pursuant to the terms of the Fund's Active Plan Document ("Plan"). Id. at ¶ 30. The Fund's Joint Board of Trustees ("Board") administers the Fund in accordance with the Plan and serves as the Fund's "administrator" for purposes of 29 U.S.C. §1002(16). (Record Document 1-7).

Cleveland resides in Louisiana and is a participant in and beneficiary of the Fund. See Record Document 1 at ¶ 1, 98(b). In October, 2013, Cleveland was injured in a car accident ("Accident") when the vehicle of non-party Steven Gipson ("Gipson") struck Cleveland's vehicle. Id. at ¶ 33. Gipson had a liability insurance policy with Citadel Insurance Co. a/k/a Go Auto Insurance ("Citadel") at the time of the accident. The insurance policy had a limit of $15,000. Cleveland had medical payments insurance and underinsured motorist ("UM") insurance with Shelter Mutual Insurance Co ("Shelter"). Id. Wade Visconte ("Visconte") d/b/a All American Law Firm of LA, was retained to represent Cleveland in relation to the Accident. Id.

The Plan provides that whenever the Fund makes any payments for benefits on behalf of a covered individual related to any injury, the Fund is immediately subrogated and vested with subrogation rights. See Record Document 1-7. Following the accident, the Fund paid approximately $10,411.03 in accident-related medical expenses on Cleveland's behalf and paid Cleveland approximately $1820.74 in loss of time benefits related to the Accident. See Record Document 1-2. The payments paid by the Fund totaled $12, 231.77. Id. On December 5, 2013, Shelter paid the Fund approximately $5,000 representing the full limit of Cleveland's medical payments policy. (Record Document 1). Visconte sent an email on January 9, 2014 to the Fund's outside counsel, which stated: "The lien/subrogation asserted by your firm is illegal...Shelter was not authorized to make

any payments to you." (Record Document 1-2).

Cleveland, through Visconte, filed suit against the Fund and Citadel on January 21, 2014 in Louisiana state court. (Record Document 1). Cleveland sought to recover Gipson's $15,000 policy limit from Citadel, as well as a declaratory judgment that the Fund did not have a valid subrogation claim to any of the $15,000. Id. On January 28, 2014 Citadel filed a concursus (interpleader) action. Citadel deposited $15,000 into the state court's registry and asked the court to determine who was entitled to the Funds. Id. There was extensive correspondence between the Fund and Visconte in which Visconte continued to argue that the Fund had no subrogation rights. (Record Document 11).

The Fund sent a letter to Visconte on February 11, 2014 explaining that, based on Cleveland filing the state court litigation, and other breaches of his obligation under the Plan to cooperate with the Fund in enforcing its subrogation rights, the Fund had decided

> to exercise its rights under the Plan to recoup all past medical benefits related to the accident that it paid on Cleveland's behalf, to decline to pay any present or future medical or short term disability benefits relating to the accident, and to place an overpayment on Cleveland's loss of time account until the Fund recovered all loss of time benefits it [had] paid for injuries arising from the Accident.

(Record Document 1-2).

The Fund also alerted Visconte that due "to its decision to recoup" the Accident-related benefits it had paid, it was "not making any claim against the $15,000 in insurance proceeds at issue" in the state court litigation and would not be appearing in that litigation. Id. Also in the letter, the Fund stated that Cleveland had a right to appeal the Adverse Benefit Determination to the Fund's Appeals Committee. Id.

Cleveland, through Visconte, appealed the Adverse Benefit Determination to the

Board's Appeals Committee on March 24, 2014. (Record Document 1). On April 9, 2014, the Appeals Committee reviewed and rejected Cleveland's first-level appeal. (Record Document 1-2). The Appeals Committe explained that they had determined that the Adverse Benefit Determination was proper under the terms of the Plan because Cleveland had repeatedly violated Sections 11.14(b) and (d) by refusing to cooperate with the Fund to enforce its lien. (Record Document 1-2). Visconte was also informed that Cleveland could file a second and final appeal to the Trustee Appellate Review Committee (TARC). Id. Cleveland appealed the Appeals Committee's decision to TARC on August 4, 2014. (Record Document 1). TARC reviewed and ultimately denied the second-level appeal on November 12, 2014. (Record Document 1-17). TARC found that Cleveland had repeatedly violated sections 11.14(b) and (d) of the Plan by refusing to cooperate with the Fund in its efforts to enforce its subrogation rights and by actually taking affirmative steps in an effort to impair those rights. Id.

An amended consent judgment was issued in the state court litigation. (Record Document 1-16). The judgment acknowledged that the Fund had confirmed it was not making any claims to the funds deposited into the Court's registry. Cleveland and Visconte were awarded 100% of the funds in the court registry. Id.

**LAW AND ANALYSIS**

**I.    Rule 12(b)(6) Standard.**

Defendant's Motions to Dismiss are filed pursuant to Federal Rule of Civil Procedure 12(b)(6). In assessing a motion to dismiss for failure to state a claim, the court must accept as true all well-pleaded facts in the complaint and view those facts in the light most

favorable to the plaintiff. See In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir.2007). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief-including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir.2007), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-556, 127 S.Ct. 1955, 1964-1965 (2007). The task is "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir.2010), citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949.

**II. Motion to Dismiss Filed by Central States, Southeast and Southwest Areas Health and Welfare Fund**

Cleveland and Visconte raise five claims in their complaint against Central States, Southeast and Southwest Areas Health and Welfare Fund. The Fund has filed a Motion to Dismiss in which they argue that all five claims should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

A. ERISA Preempts State Law

Many of Cleveland's claims are brought under sections of the Employee Retirement Income Security Program (ERISA). Cleveland has raised claims that the Fund was not permitted to file a subrogation lien based on Louisiana state law. The Fund has countered that ERISA preempts state law based on the fact that the Fund is a self-funded welfare plan. The Supreme Court has established that "self-funded ERISA plans are exempt from

state regulation insofar as that regulation 'relate[s] to' the plans." FMC Corp. v. Holliday, 498 U.S. 52 (1990).

The preemption clause in ERISA states that ERISA "shall supersede any and all state laws insofar as they may now or hereafter relate to any employer benefit plan," with two exceptions. 29 U.S.C. 1144(a). The relevant exception to these facts is §1144(b)(2)(A), which states that any state law regulating insurance, banking or securities is not preempted. This exception has its own exception described in §1144(b)(2)(B), which exempts any employee benefit plan described in §1003(a) from being deemed an insurance company engaged in the business of insurance for the purposes of any state law purporting to regulate insurance companies . The Fund is an employee welfare benefit plan as described in 29 U.S.C. §1002(1), making it fall within the exception described in §1003(a) because it is an employee benefit plan established by an employer engaged in commerce. As a result, ERISA preempts Louisiana state law with respect to the Fund. Plaintiffs' claims that Louisiana state law controls any subrogation rights that the Fund may have is incorrect. For this reason, Louisiana state law may not be used by this court in examining or evaluating the subrogation rights of the Fund. Accordingly, the subrogation rights outlined in the Plan are valid.

B. Claims of Wade Visconte d/b/a All American Law Firm of LA, LLC

It is necessary to first address the claims brought by Visconte against The Fund. Visconte was retained as legal counsel by Cleveland in relation to the Accident. The five claims in the complaint appear to be made by both Visconte and Cleveland. There is no question that Cleveland may bring these claims under ERISA, as he was the participant in the Fund. The Fund has argued that Visconte does not have standing to raise any of the

five claims because he is not a participant, beneficiary or fiduciary of the Fund. See Record Document 11-1.

Visconte, in his reply memorandum argues, "If the Court accepts this conclusion as true, then deductive logic dictates that ERISA does **not** bind Visconte personally to 'cooperate' with the Fund and the Plan's written provisions impose no contractual obligation on Visconte." See Record Document 21. Under 29 U.S.C. § 1132(a)(1)(B), an ERISA claim may only be brought "by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." "Participant" is defined as:

> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002 (7)

A "beneficiary" is defined as "a person designated by a participant, or by the terms of any employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002 (8).

Visconte is not an employee who is eligible to receive a benefit of any type from the Fund, therefore he cannot be a participant under the defined terms of ERISA. No evidence has been provided to the court that Visconte has been designated by Cleveland such that he would become entitled to a benefit. Visconte is not entitled to bring a claim under ERISA under the clear language of the statute, and, therefore, he does not have standing to bring a claim. Based on the lack of standing, all claims brought by Wade Visconte against The Fund are **DISMISSED**.

D. Res Judicata Claims

One of the many claims made by Cleveland and Visconte is that they "seek a declaratory judgment that the rulings in the two aforementioned state court rulings are *res judicata*" and cite to the consent judgment for the consolidated cases. See Record Documents 1 and 1-16. Their argument is limited to the above sentence. The Fund again argues there is no case or controversy based on the fact that there is no possibility that they will file litigation seeking relief contradicting the rulings in the state court litigation. See Record Document 11. The Court in Chevron established five elements that must be satisfied in order to prove *res judicata*: (1) the judgment is valid, (2) the judgment is final, (3) the parties are the same, (4) the cause or causes of action asserted in the second suit existed at the time of the final judgment in the first litigation, and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. Chevron U.S.A. v. State, 993 So. 2d 187 (2008). It is clear from the Motion to Dismiss and exhibits submitted by the Fund, that it has not filed litigation, nor does it have any plans to file litigation seeking relief in contradiction of the ruling of the First Judicial District Court. Based on this fact, element five is not satisfied and, therefore, this lawsuit is not barred by *res judicata*. Accordingly, the *res judicata* claim is **DISMISSED**.

E. Plaintiff's Benefits Claims

The Fund has grouped together a number of claims made by Plaintiff, categorizing them as "benefits claims." These are all claims that are related to the denial of the benefits in the administrative processes of the Fund. The Fund first argues that claims three, four, and five should be dismissed because they are brought under section 1132(a)(3) instead

of 1132(a)(1)(B).

The Fund argues that "The Supreme Court has construed Section 1132(a)(3) as a "catchall" provision that provides an avenue to bring claims not provided for under other parts of Section 1132 (a), such as certain claims for fiduciary duty seeking individual relief". See Record Document 11. The Fifth Circuit has held that Section 1132(a)(3) allows for plaintiffs to sue for breach of fiduciary duty for personal recovery when no other appropriate equitable relief is available. Tolson v. Avondale Industries, Inc. 141 F. 3d 604, 610 (5th Cir. 1998). The plaintiff in Tolson had adequate relief available through his right to sue under Section 1132(a)(1) making relief under 1132(a)(3) inappropriate. Claims Three, Four and Five are all brought pursuant to 1132(a)(3). Cleveland argues that they are seeking separate and distinct declaratory judgment relief under Section 1132(a)(3) than that sought under 1132(a)(1). See Record Document 21.

Cleveland misunderstands the holding, as it is made clear in Tolson that 1132(a)(3) is only appropriate when a plaintiff does not have a claim under 1132(a)(1) or 1132(a)(2). In this instance, Cleveland raises numerous claims under 1132(a)(1) making it clear that they have claims that may be brought under that section. Based on the holding in Tolson, claims three, four and five which are brought under 1132(a)(3) must be **DISMISSED**.

As for the remaining benefits claims, it is necessary to look at the administrative decisions by the Fund in denying the benefits sought by Cleveland. The Supreme Court has established that "a denial of benefits challenged under 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). This has been

interpreted by the Fifth Circuit, that "When, in an ERISA case, 'the language of the plan'—like the one at issue here—'grants discretion to an administrator to interpret the plan and determine eligibility for benefits, a court will reverse an administrator's decision only for abuse of discretion.'" McCorkle v. Metropolitan Life Insurance Co., 757 F. 3d 452, 457-78 (5th Cir. 2014).

> Even though the 'administrator's decision to deny benefits must be supported by substantial evidence,' substantial evidence is merely 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Ultimately, a court's 'review of the [Plan] administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness—even if on the low end.' Obviously, no court may substitute its own judgment for that of the plan administrator." Id.

It is necessary to first determine whether the Plan gives an administrator the authority to determine eligibility for benefits or to construe the terms of the plan. The Plan grants the Fund's Administrator, which is the Board, discretion to interpret the Plan and make benefit determinations in Section 8.03. See Document 11-F. This means that the standard used is whether the Board abused their discretion in making the benefits decision. There is a two-step process in analyzing whether the benefits denied was an abuse of discretion. The first question is whether the plan administrator's determination was "legally correct." If it was legally correct, the inquiry ends. If it was not legally correct the second question is whether there was an abuse of discretion. Crowell v. Shell Oil Co., 541 F. 3d 295, 312, (5th Cir. 2008).

To determine whether the administrator's interpretation of the Plan is legally correct there are three questions: (1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and

(3) any unanticipated costs resulting from different interpretations of the plan. Id. The relevant section of the Plan is section 11.14:

> (a) The Fund, whenever it makes any payment for any benefits on behalf of a Covered Individual or other person related to any illness, injury or disability (collectively and separately "Disability") of the person, is immediately subrogated and vested with subrogation rights ("Subrogation Rights") to all present and future rights of recovery ("Loss Recovery Rights") arising out of the Disability which that person and his parents, heirs, guardians, executors, attorneys, agents and other representatives (individually and collectively called the "Covered Individuals") may have. The Fund's Subrogation Rights extend to all Loss Recovery Rights of the Covered Individual.
>
> (b) The Covered Individual shall fully cooperate with the Fund in enforcement of the Fund's Subrogation Rights, shall upon request by a Fund representative execute whatever documents are appropriate to enforce and preserve the Fund's Subrogation Rights, shall perform whatever acts are requested by a Fund representative to enable the Fund to effectively prosecute a civil action in the name of the Covered Individual and/or the Fund and one or more Trustees if the Fund deems such action necessary or appropriate and shall refrain from any act or omission that would to any extent prejudice or impair the Fund's Subrogation Rights.
>
> (c) The payment by the Fund for any benefits on behalf of a Covered Individual related to his or her Disability, and the simultaneous creation of the Fund's Subrogation Rights to the full extent of present and future payments, shall by itself (without any documentation from, or any act by, the Covered Individual) result in an immediate assignment to the Fund of all right, title and interest of the Covered Individual to and in any and all of his or her Loss Recovery Rights to the extent of such payments, and said payment by the Fund on behalf of a Covered Individual shall be deemed to constitute the Covered Individual's direction to his or her attorneys and other representatives to reimburse the full amount of the Fund's Subrogation Rights, from any settlement proceeds or other proceeds (collectively "Proceeds") which are paid to the attorneys or representatives for the Covered Individual, before the Covered Individual receives any Proceeds in full or partial satisfaction of his or her Loss Recovery Rights, and before any fees or expenses are paid, including attorneys' fees.
>
> (d) No Covered Individual (including his attorneys and other representatives) is authorized to release or impair the Fund's Subrogation Rights to any extent. The Fund is entitled to receive payment and

...

reimbursement in the full amount of the Fund's Subrogation Rights before the Covered Individual receives any Proceeds in full or partial satisfaction of his or her Loss Recovery Rights. If the Fund is vested with Subrogation Rights pursuant to this Section 11.14, then, before the Covered Individual receives any Proceeds, the Covered Individual, and every person and entity that provides any recovery of Proceeds to or on behalf of a Covered Individual, are obligated to cause all such Proceeds to be paid primarily and directly to the Fund until the Fund has received full payment and reimbursement of the Fund's Subrogation Rights.

(e) If at any time, either before or after the Fund becomes vested with Subrogation Rights pursuant to this Section 11.14, a Covered Individual directly or indirectly receives any Proceeds as full or partial satisfaction of his Loss Recovery Rights, including any payment or reimbursement of expenses (including attorneys' fees) incurred by or on behalf of the Covered Individual, without prior written approval of an authorized Fund representative, the Fund shall be vested with each of the following mutually independent rights: (1) The right, at any time, to decline to make any payment for any benefits on behalf of the Covered Individual related to the Disability on which the Proceeds were based . . .

See Record Document 1-7.

The administrative process for appealing the denial of a benefit by the Fund requires that the aggrieved party file an appeal to the Fund's Appeals Committee, and, if the benefits denial is upheld, a party may then appeal to the Trustee Appellate Review Committee (TARC). If TARC upholds the denial, then a party may seek review from the court. Cleveland went through the proper administrative appeals process within the Fund. It is necessary to look at the decision of TARC and the reasoning used for their decision. In their denial letter, the Fund informed Cleveland that, in light of Cleveland pursuing recovery for various claims from third parties, "in such instances the Fund is immediately subrogated and vested with subrogation rights to all loss recovery rights which Mr. Cleveland has arising out of this accident." See Record Document 1-17. The letter also states that "[t]he Plan also requires Mr. Cleveland to fully cooperate with the Fund in the

enforcement of its subrogation rights and specifically requires that 'he refrain from any act or omission that would to any extent prejudice or impair the Fund's Subrogation Rights.'" Id.

The Fund references letters sent from Visconte on behalf of Cleveland, with one letter containing a threat from Visconte to "intervene in any such action and take the position that the 'savings' clause results in no subrogation/ reimbursement amount being owed to the fund." Id. In defense of their denial, they also cite to the lawsuit filed by Cleveland in the First Judicial District Court, which resulted in a ruling that the Fund had no lien against Go Auto Ins. Co. Looking at all of the evidence cumulatively, the Fund properly concluded that Cleveland had violated section 11.14 in that he interfered with the Fund's right to pursue their subrogation rights.

Next, this Court must look to the three-prong test to determine whether the plan administrator's determination was legally correct. The first question is whether the administrator has given the plan a uniform construction. In reviewing the Plan as a whole, it is clear that the Board construed the Plan in a uniform matter. The Plan as a whole gives the Fund subrogation rights, and specifically the right to recover money before the participant in the event a subrogation lien is enforced. The second question is whether the interpretation is consistent with a fair reading of the Plan. Again the interpretation of the Board is consistent with the Plan read in a fair manner as a whole. It is clear from the language of the Plan that the Fund is entitled to primary subrogation rights vis a vis the participant, and an individual who interferes with the Fund's attempt to recover any subrogation amount would be in violation of section 11.14. This interpretation is consistent with the finding of the Board denying benefits to Cleveland. The final question is whether

there are any unanticipated costs resulting from different interpretations of the plan. There do not appear to be any unanticipated costs from any different interpretations of the Plan. The Plan is very straightforward without any ambiguities in the language relating to subrogation rights. The internal appeals process resulted in a consistent interpretation of the Plan's provision.

Even if the Board's decision could be captioned as not legally correct, the Board did not abuse their discretion in denying the benefits to Cleveland. In reviewing the extensive correspondence between Visconte and the Fund, it is abundantly clear that Visconte interfered with the Fund's right to subrogation per the clear, unambiguous language of the Plan. The Fund has attached over 1000 pages of documentation in support of its Motion to Dismiss, many of which are correspondence between Visconte and the Fund. It is not productive to summarize every letter exchanged, however, this Court cannot deny that the overall tone of the correspondence by Visconte, as the Participant's legal representative, is such that there is no doubt he did everything in his power to prevent the Fund from receiving the money it was entitled to receive under the subrogation lien. See Record Document 11. There is more than substantial evidence to show that the Board acted within their discretion under the terms of the Plan.

### 1. Declaratory Judgment Claims

Cleveland seeks a declaratory judgment that he and Visconte did not violate the Plan provisions and that he cooperated to the extent required under the terms of the Plan by offering to execute "whatever documents" were necessary for the Fund to hire its own counsel at the Fund's costs to pursue The Fund's subrogation claim (Record Document 1). The Fund argues that these claims should be dismissed because they do not contain a

case or controversy.  Cleveland argues that "The Fund is engaging in semantics" and:

> said conclusion is confirmed by the fact that the Fund acknowledges that it has **not** waived the recoupment of '$1,820.74 in disability payments" and confesses to the court that 'the Fund will attempt to recover those payments by deducting the amount of those payments from any future disability payments it makes to Cleveland.'"

See Record Document 21.

In their Motion to Dismiss, the Fund stated that they "no longer had a lien relating to Accident-related medical expenses because it had recouped all such expenses it had paid."

See Record Document 11.  The motion continues:

> the Fund did make approximately $1820.74 in disability payments to Cleveland (none of which it has recouped), the Fund will not seek to recover those disabilities through asserting a lien against insurance proceeds. Instead as the Fund has repeatedly informed Mr. Visconte, the Fund will attempt to recover those payments by deducting the amount of those payments from any future disability payments it makes to Cleveland. See id.

Irrespective of the dispute over the subrogation lien, and any claims the Fund has to monies paid to Cleveland, Plaintiffs have sought a declaratory judgment that they cooperated with the Fund without violating the Plan provisions.  See Record Document 1. The above factual analysis establishes that Plaintiffs did in fact violate the Plan provisions, and that the Board was within its discretion to deny benefits to Cleveland.  Accordingly Plaintiffs' claims for declaratory judgment are **DENIED**.

F. Court Costs and Fees

Plaintiffs are seeking fees and costs that they have incurred in the state court litigation and this federal litigation.  This claim is brought pursuant to 29 U.S.C. §1132(g) which states that "in any action under this subchapter by a participant, beneficiary or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of

action to either party." This Court has the discretion as to whether or not reasonable attorney's fees and costs are appropriate to be awarded to either party. The Fund has made no claim for attorney's fees and costs. It is clear from reading the complaint as a whole, that Plaintiff has failed to state even one valid claim in the fifty pages provided. Without any valid claim, it is inappropriate for Plaintiffs to be awarded any costs and fees in this matter. Accordingly, the Plaintiffs demand for costs and fees is **DISMISSED**.

G. Requested Documents

Plaintiffs have also claimed that they requested a number of documents from the Fund, which were allegedly never provided to Plaintiffs. They cite 29 C.F.R. 2560.503-1(h)(2)(iii) which provides that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the claimant's claim for benefits. A document is deemed "relevant" under 29 C.F.R. 2560.503-1(m)(8) if it was relied upon in making the benefit determination, was submitted, considered or generated in the course of making the benefit determination, demonstrates compliance with the administrative processes and safeguards required.

The Fund argues that the only document they used in making the benefit denial was the Plan itself, as Plaintiffs violated the terms of the Plan. No evidence has been provided that the Board used any documents besides the Plan in denying benefits. The denial letter clearly outlines what sections of the Plan were used in making their decision. Plaintiffs are not entitled to the documents sought in the complaint. Plaintiffs' claim is **DISMISSED**.

### III. Plaintiffs' Motion for Partial Summary Judgment

In light of Plaintiffs failing to bring a valid claim and the motion to dismiss being granted, the motion for partial summary judgment filed by Plaintiffs is now **MOOT**.

### CONCLUSION

Based on the foregoing analysis, the Court finds that Cleveland and Visconte have has failed to set forth any factual allegations that raise a right to relief above the speculative level as to any of their numerous claims. Thus, Defendant's Motion to Dismiss (Record Document 11) is **GRANTED** and all of Cleveland and Visconte's claims are **DISMISSED**. Plaintiffs' Motion for Partial Summary Judgment (Record Document 23) is **DENIED AS MOOT**.

A Judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 24th day of September, 2015.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE